```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION
```

```
Burke Automotive Group, Inc.     )
d/b/a Naperville Chrysler        )
Dodge Jeep Ram,                  )
                                 )
          Plaintiff,             )
                                 )
                                 )
     v.                          )   No. 24 C 12263
                                 )
                                 )
FCA US, LLC d/b/a Stellantis     )
North America,                   )
                                 )
          Defendant.             )
```

Memorandum Opinion and Order

For years, Burke Automotive Group, Inc. ("Burke Auto") was an automobile dealership offering FCA US LLC's vehicles and parts. That franchise arrangement lasted until, Burke Auto alleges, FCA's conduct forced Burke Auto to sell its assets. Burke Auto brought this suit under the Federal Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221 *et seq.*, the Illinois Motor Vehicle Franchise Act, 815 Ill. Comp. Stat. 710/1 *et seq.*, and for breach of contract and breach of the covenant of good faith and fair dealing under Illinois common law. FCA now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion is granted in part and denied in part.

I.

Burke Auto and FCA entered into several "service agreements" and addenda, attached as exhibits to the complaint, in November 2012. Under the agreements, Burke Auto became a dealer of FCA's vehicles, which include the Chrysler, Jeep, Dodge, and RAM brands. FCA was required to provide vehicles and parts to Burke Auto, which was in turn required to sell these goods within its market area.

The complaint describes FCA's purported "turn and earn" system of allocating vehicles, where "turn" refers to turnover ratio and "earn" refers to "gross margin return on investment." Compl., ECF 1 ¶¶ 54-55. Under this system, faster turnover of inventory resulted in an increased allocation of vehicles while slower turnover would reduce the vehicles sent to a dealership. Similarly, dealerships with higher "earn" rates would receive more vehicles to sell, and those with lower earn rates received fewer.

When properly implemented, Burke Auto alleges this system is a rational one: it aligns vehicle allocations with the productivity of a dealership. But FCA manipulated the system and doled out vehicles arbitrarily, pushing Burke Auto into a "death spiral." *Id.* ¶ 65. FCA intentionally deprived Burke Auto of "enough inventory to meet the needs of [Burke Auto's] customers or to allow [Burke Auto] to satisfy sales goals and relative performance measures." *Id.* ¶ 78. This "depletion of [Burke Auto's] inventory made it increasingly difficult to 'turn-and-earn' additional

2

inventory from [FCA], starving it out of business." *Id.* ¶ 79. Having sent Burke Auto spiraling, FCA then failed to adjust Burke Auto's allocation or to provide it with needed support. For instance, in 2022 FCA failed to allocate a sufficient number of vehicles to the point that Burke Auto had only 20 vehicles on hand.

Meanwhile, favored dealers received sufficient supply. *See id.* ¶ 75 (FCA "exercised discretion to shift allocations to favored dealers."); *id.* ¶ 87 ("Inventory was taken out of the turn and earn system, and given to favored dealers, such as those that built new stores, before allocation to remaining dealers based on the alleged allocation formula or method."). Burke Auto alleges, on information and belief, different theories as to the source of these excess allocations. They may have come at the direct expense of disfavored dealers like Burke Auto, with FCA diverting "ready-to-ship" inventory from those dealers to the more favored ones. *Id.* ¶ 93. Or there might have existed an "unofficial pool of discretionary vehicles that is allocated only to favored dealers." *Id.* ¶ 95. To illustrate, Burke Auto alleges that in July 2022 it had a higher turn rate than other dealers but received lower allocations than they did. In that month, Burke Auto had a beginning-of-month turn rate of 38%, compared to a 20% turn rate at "a dealer named Elgin," but Elgin nonetheless was sent 66 vehicles compared to Burke Auto's 15. *Id.* ¶¶ 111-14. Burke Auto

3

repeatedly sought information about the allocation system, but FCA refused to explain the system transparently.

In the end, Burke Auto was forced to sell its assets to a third party in the summer of 2022. About one month after the sale, the new dealer's website showed that it had 210 vehicles in stock, considerably more than the vehicles Burke Auto had just one month before.

As for why FCA acted as it did, Burke Auto alleges it may have been retaliation for Burke Auto's participation in an arbitration against FCA after Chrysler's bankruptcy. Additionally, Burke Auto posits that its refusal to prioritize FCA's sales and volume demands in lieu of Burke Auto's own profitability motivated FCA's actions.

## II.

The Automobile Dealers' Day in Court Act (ADDCA) imposes liability on automobile manufacturers who fail "to act in good faith in performing or complying with any of the terms or provisions of the franchise, or in terminating, canceling, or not renewing the franchise with said dealer." 15 U.S.C. § 1222. The ADDCA defines "good faith" as:

> [T]he duty of each party to any franchise . . . to act
> in a fair and equitable manner toward each other so as
> to guarantee the one party freedom from coercion,
> intimidation, or threats of coercion or intimidation
> from the other party: *Provided*, That recommendation,
> endorsement, exposition, persuasion, urging or argument
> shall not be deemed to constitute a lack of good faith.

4

*Id.* § 1221(e) (italics in original). Under this statutory definition, Burke Auto must show a lack of good faith not in the "ordinary sense," but "in which coercion, intimidation, or threats thereof, are at least implicit." *Lawrence Chrysler Plymouth, Inc. v. Chrysler Corp.*, 461 F.2d 608, 610 (7th Cir. 1972).

FCA argues that Burke Auto has not alleged coercion or intimidation and instead relies on vague allegations of arbitrariness. But FCA demands too much, asserting that Burke Auto must allege an explicit demand from FCA that it refused. As the *Lawrence Chrysler* court observed, coercion can be implicit, which means that "[m]anipulation of the dealer's inventory may constitute coercion when the facts suggest an intent to drive the dealer out of business." *Olympic Chevrolet, Inc. v. Gen. Motors Corp.*, 959 F. Supp. 918, 921 (N.D. Ill. 1997) (citations omitted); *see also Nissan Motor Acceptance Corp. v. Schaumburg Nissan, Inc.*, Nos. 93 C 2701, 92 C 6089, 1993 WL 360426, at *5 (N.D. Ill. Sept. 15, 1993) (upholding ADDCA claim based on allegation that defendant "engag[ed] in a course of conduct that was intended to drive [plaintiff] out of business" including by "discriminat[ing] against [plaintiff] in terms of allocations and marketing support so that the [d]ealership would be unprofitable").

That is precisely what Burke Auto alleges happened here. It explains that FCA "controlled and manipulated its allocation system seemingly to starve [Burke Auto] out of inventory," Compl.

5

¶ 43, by failing to deliver sufficient vehicles to satisfy customer demand while offering more vehicles to other dealers. *See, e.g.*, *id.* ¶¶ 45-52, 87-93. The complaint even suggests plausible motives for FCA's poor treatment of Burke Auto--Burke Auto's participation in arbitration against FCA and Burke Auto's refusal to prioritize FCA's goals at the expense of its own. *Id.* ¶¶ 128-29.

Thus, Burke Auto has plausibly alleged an ADDCA claim and the motion to dismiss that claim is denied.

III.

Burke Auto also brings claims under various provisions of the Illinois Motor Vehicle Franchise Act ("IMVFA"), 815 Ill. Comp. Stat. 710/1 *et seq*. For the sake of clarity, I address each under a separate heading.

Count II - 815 Ill. Comp. Stat. 710/4(a)-(b)

FCA argues that there is no private cause of action under section 4(a), which simply states that "[t]he unfair methods of competition and unfair and deceptive acts or practices listed in this Section are hereby declared to be unlawful" and offers that courts may look to interpretations of the Federal Trade Commission Act, 15 U.S.C. § 45 *et seq.*, to construe the IMVFA. 815 Ill. Comp. Stat. 710/4(a). I agree, since this provision merely proclaims that subsequent provisions describe violations of the IMVFA,

6

rather than describing one itself. The motion to dismiss is granted as to the section 4(a) claim.

Section 4(b), on the other hand, clearly provides for a cause of action, making it "a violation for any manufacturer . . . to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public." 815 Ill. Comp. Stat. 710/4(b). FCA argues Burke Auto fails to specifically identify what conduct was in bad faith or unconscionable, but that argument fails in light of the allegations about FCA's allocation practices surveyed above. The motion to dismiss is denied as to the section 4(b) claim.

Count III - 815 Ill. Comp. Stat. 710/4(d)(1)

Section 4(d)(1) makes it a violation for a manufacturer "to adopt, change, establish, or implement a plan or system for the allocation and distribution of new motor vehicles to motor vehicle dealers which is arbitrary or capricious or to modify an existing plan so as to cause the same to be arbitrary or capricious." 815 Ill. Comp. Stat. 710/4(d)(1). The complaint is replete with allegations that FCA implemented a plan that arbitrarily allocated vehicles to Burke Auto, *see, e.g.*, Compl. ¶¶ 45-48, 69-70, 76-77, so the motion as to this count is denied.

7

Count IV - 815 Ill. Comp. Stat. 710/4(d)(2)

Section 4(d)(2) deems it a violation for a manufacturer "to fail or refuse to advise or disclose" to a dealer, "upon written request therefor," how it determines vehicle allocation. 815 Ill. Comp. Stat. 710/4(d)(2). FCA argues this count should be dismissed because Burke Auto fails to allege that it made a written request for that information, instead alleging only that it "made repeated requests for information about vehicle allocation," Compl. ¶ 105, and that FCA withheld information despite these requests, *id.* ¶ 106. Plaintiffs are not required to include detailed factual allegations in their complaints, so long as what they allege makes their claims plausible. But where, as here, a statute specifies the requirement of a written request, and where knowledge of whether a written request was made lies with the plaintiff, failure to allege that fact is fatal. If Burke Auto in fact made a written request, it will have the opportunity to allege that fact in an amended complaint. The motion to dismiss is granted on this count.

Count V - 815 Ill. Comp. Stat. 710/4(d)(3)

Section 4(d)(3) makes it a violation "to refuse to deliver in reasonable quantities and within a reasonable time after receipt of dealer's order . . . motor vehicles as are covered by [a] franchise or selling agreement specifically publicly advertised in the State by [the] manufacturer . . . to be available for immediate

8

delivery." 815 Ill. Comp. Stat. 710/4(d)(3). FCA faults Burke Auto for failing to allege that FCA advertised in Illinois that any of its vehicles were available for immediate delivery. But Burke Auto does make that factual allegation. *See* Compl. ¶ 184. It is not required to allege more detailed facts on this score without the aid of discovery. Moreover, the remaining allegations in the complaint--which concern FCA's failure to adequately supply certain vehicles--bolster the claim's plausibility.

FCA's additional argument that the complaint fails to allege that FCA refused to fill Burke Auto's orders as to specific vehicles similarly contemplates too much detail. Burke Auto alleges, as one example, that it "did not receive its fair share of inventory from [FCA]." *Id.* ¶ 45. It need not identify the specific vehicle orders at this stage. The motion to dismiss is denied as to Count V.

Count VI - 815 Ill. Comp. Stat. 710/4(d)(4)

Section 4(d)(4), as relevant here, makes it a violation to "threaten[] to reduce [a dealer's] allocation of motor vehicles." 815 Ill. Comp. Stat. 710/4(d)(4). FCA argues there are no allegations of direct threats. However, FCA supplies no argument that a direct, explicit threat is required for liability under this section. The complaint sufficiently describes a campaign against Burke Auto aimed at reducing its vehicle allocation in

retaliation for Burke Auto's participation in arbitration to make it plausible that FCA's conduct amounted to an implied threat. The motion to dismiss is denied as to Count VI.

Count VII - 815 Ill. Comp. Stat. 710/4(d)(6)

Section 4(d)(6) makes it a violation for a manufacturer to cancel, terminate, or refuse to extend or renew a dealership agreement without notice or good cause. 815 Ill. Comp. Stat. 710/4(d)(6). FCA argues that the Illinois Supreme Court has held that Illinois courts lack subject-matter jurisdiction to determine liability under this provision, a task reserved for the Illinois Motor Vehicle Review Board. *See Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 959 N.E.2d 1133, 1144, 1147 (Ill. 2011) (holding that claim must be brought before Motor Vehicle Review Board and, upon a finding of no good cause by that body, claim can be filed in court on the issue of damages). Burke Auto does not substantively respond to this jurisdictional argument. Based on the *Crossroads* decision, I agree that I lack jurisdiction to consider this claim and dismiss it without prejudice under Rule 12(b)(1).

Count VIII - 815 Ill. Comp. Stat. 710/9

Section 9(a) makes it unlawful for a manufacturer "to fail to renew a franchise on terms then equally available to all its motor

10

vehicle dealers, or to terminate a franchise or restrict the transfer of a franchise until the franchisee shall receive fair and reasonable compensation for the value of the business and business premises." 815 Ill. Comp. Stat. 710/9(a). FCA argues this provision has no application here because there is no allegation that it failed to renew, terminated, or restricted the transfer of Burke Auto's dealership. In Burke Auto's view, this prohibition reaches circumstances like this one, in which a manufacturer "artificially deflate[s] the sales price [of a dealership] to destroy a business or support a favored dealer as a competitor or purchaser." Resp., ECF 30 at 13. While other provisions of the IMVFA might reach this conduct--as some of Burke Auto's surviving claims demonstrate--I agree with FCA that violation of this provision only occurs where a manufacturer "fail[s] to renew," "terminate[s]," or "restrict[s] the transfer of" a franchise, none of which is alleged to have occurred here. Accordingly, the motion to dismiss is granted as to this count.

## IV.

The complaint sets forth one count for breach of contract and one count for breach of the implied covenant of good faith and fair dealing. As FCA correctly argues, "Illinois does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing." *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 793 (N.D. Ill. 2010). But the covenant,

11

implied in every contract under Illinois law, can form the basis of a breach of contract claim. *See id*. Thus, while as a formal matter I dismiss the separate claim for breach of the covenant of good faith and fair dealing, the allegations surrounding it are subsumed under the breach of contract claim.

A breach of contract claim in Illinois consists of the following elements: (1) a valid and enforceable contract; (2) plaintiff's performance; (3) defendant's breach; and (4) injury to the plaintiff. *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 520 (7th Cir. 2025) (citing *Batson v. Oak Tree, Ltd.*, 2 N.E.3d 405, 414 (Ill. App. Ct. 2013)). FCA argues that Burke Auto does not sufficiently allege facts related to the third element, breach. It does so first by pointing out that Burke Auto does not anywhere identify a contractual provision that was breached. While some courts in this district have required plaintiffs at the pleading stage to point to the specific contractual provision they claim was breached, most do not. *Compare, e.g.*, *Gandhi v. Sitara Cap. Mgmt., LLC*, 689 F. Supp. 2d 1004, 1016 (N.D. Ill. 2010) (concluding plaintiffs failed to meet pleading burden "[b]y not identifying in their complaint the provision of the [contract] allegedly breached"), *with Souza v. Erie Ins. Co.*, No. 22-cv-3744, 2023 WL 4762712, at *4 (N.D. Ill. July 25, 2023) ("A majority of courts in the district have found that a plaintiff is not required to cite

12

a specific contract provision. . . ." (citation and internal quotation marks omitted)). I agree with the majority.

Even so, absent identification of a specific contractual provision, Burke Auto "must in all events plead sufficient facts to suggest plausibly that a breach of some contractual obligation occurred." *Melnick v. Betfair Interactive, LLC*, 563 F. Supp. 3d 822, 824 (N.D. Ill. 2021) (citing *Sumi Cho v. Rosato Perea*, No. 19 C 8117, 2019 WL 4645419, at *10 (N.D. Ill. Sept. 24, 2019)). Here, Burke Auto alleges that the agreements with FCA entitled it "to receive vehicles and parts for retail sale, and [FCA] was obligated to provide these vehicles and parts." Compl. ¶ 36. Yet FCA "fail[ed] to allocate sufficient vehicles in terms of quantity, type, or mix," *id.* ¶ 216, as described throughout the complaint. Arguing only that Burke Auto fails to sufficiently identify a contractual obligation FCA breached, FCA offers little to persuade me that these alleged breaches could not have arisen from the parties' agreements. Thus, the breach of contract claim survives.

Furthermore, the allegation that FCA acted "in a discriminatory, arbitrary, and inequitable fashion," *id.*, which echoes other core allegations in the complaint, plausibly suggests FCA ran afoul of the duty of good faith and fair dealing. That could itself amount to a contractual breach. In *Interim Health Care of Northern Illinois, Inc. v. Interim Health Care, Inc.*, the Seventh Circuit examined the duty of good faith and fair dealing,

13

explaining that "[p]roblems relating to good faith performance are most common where one party to an agreement is given wide discretion, and the other party must hope the discretion is exercised fairly." 225 F.3d 876, 884 (7th Cir. 2000) (citing *Dayan v. McDonald's Corp.*, 466 N.E.2d 958, 971 (Ill. App. Ct. 1984)). "When one party to a contract is vested with contractual discretion, it must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously or in a manner inconsistent with the reasonable expectations of the parties." *Id.* (citation omitted); *see also Hickman*, 683 F. Supp. 2d at 792–93 (same). The court in *Interim Health* went on to allow a breach of contract claim premised on violation of the duty of good faith to proceed past summary judgment because of evidence that the defendant had abused the discretion it possessed under the contract.

Burke Auto's allegations, taken as true, make it plausible that FCA abused its contractually-conferred discretion--discretion FCA agrees it possessed, *see* Reply, ECF 34 at 1-2--as to vehicle allocation. Thus, both because Burke Auto has alleged FCA breached contractual obligations and because it has alleged it violated the covenant of good faith and fair dealing, Burke Auto's breach of contract claim may proceed.

V.

For the foregoing reasons, FCA's Rule 12(b)(6) motion to dismiss is granted in part and denied in part. It is granted as to the portion of Count II premised on 815 Ill. Comp. Stat. 710/4(a), and as to Counts IV and VIII. Count X is also dismissed, but as discussed Burke Auto may continue to pursue this theory via its breach of contract claim. Count VII is dismissed without prejudice for lack of subject-matter jurisdiction. The motion is denied as to the remaining counts. Burke Auto may file an amended complaint within 21 days of this order to remedy the deficiencies identified in the dismissed counts.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: April 25, 2025